Argued at Pendleton November 1; affirmed December 19, 1939;
rehearing denied January 30, 1940

## WEINKE ET AL. *v.* MAJESKE ET AL.

(97 P. (2d) 179)

In Banc.

*C. Z. Randall,* of Pendleton (Randall & Perry, of Pendleton, on the brief), for appellants.

*Homer I. Watts,* of Athena, and *C. C. Proebstel,* of Pendleton, for respondents.

RAND, C. J. Ella Weinke, the widow of Carl Weinke, deceased, brought this suit in her individual capacity and as guardian of her seven minor children to set aside an order and decree of the county court of Umatilla county, approving and settling the final account of Adolph Majeske, as administrator of the estate of her deceased husband.

In their complaint, the plaintiffs allege that Adolph Majeske converted to his own use certain personal property and moneys of the estate which came into his possession as administrator and has failed to account for the same. They also allege that a short time prior to his death, the decedent and his wife, Ella Weinke, executed and delivered to the Majeskes a deed conveying to them a 1280-acre tract of land in Umatilla county; that the deed was given to secure certain loans made to the decedent by Adolph Majeske and, although absolute in form, was intended as a mortgage; that immediately following decedent's death, the Majeskes

entered into the possession of the land and have ever since retained possession and claim to be the absolute owners thereof.

The complaint prays that Adolph Majeske be required to account for the personal property and moneys so converted by him; that the said deed be decreed to be a mortgage, and that the Majeskes be compelled to account for the rents, issues and profits of said land during the time the same has been in their possession and under their control.

After the cause had been put at issue, a trial and an accounting were had before the Honorable Calvin L. Sweek, Circuit Judge, and a decree was entered in favor of the plaintiffs, holding that the defendant-administrator had been guilty of the fraudulent acts complained of and that the said deed, although absolute in form, was a mortgage and had been given to secure loans aggregating the sum of $2200, and awarding to the plaintiffs a judgment for the amount found to be due to the plaintiffs on the accounting and also decreeing that the Majeskes be required to reconvey the said 1280-acre tract of land to the plaintiffs upon payment by the plaintiffs of the sum of $2200 with interest thereon at the rate of 6 per cent per annum from the date when said loans were made, together with the taxes and other moneys expended by the defendants upon the land less the amount found to be due on the accounting of the rents, issues and profits thereof while the land was in their possession and under their control. From this decree, the defendants have appealed.

In the instant case, the plaintiffs sought not only to surcharge and falsify the final account of the administrator and to set aside the order and decree of the

county court approving and settling the same but also to obtain other equitable relief concerning other matters which were directly connected with the subject matter of the suit.

The defendants admit that a court of equity has jurisdiction to set aside and vacate the final order of the county court approving and settling the final account of an administrator when it is shown that such order and decree was obtained by fraud, but they contend that, when such order has been set aside, it then becomes the duty of the equity court to direct that a new accounting be made in the probate court and that the court setting aside the order has no jurisdiction to grant any other or further relief in the case. In support of this, they cite no Oregon case but they do cite a few decisions in states where, by reason of some constitutional provision, a court of equity is not vested with the power to settle administrators' accounts, such power being vested exclusively in probate courts. Among these cases they cite five early cases from the state of Mississippi, where, under the constitution of that state as it then existed, it was held that chancery had no jurisdiction over the administration of estates and that that power belonged exclusively to courts of probate. These decisions are explained in a footnote in 1 Pomeroy's Eq. Juris., 3 Ed., sec. 350, and also in a note to *Green v. Creighton*, (Miss.) 10 Smedes & M. 159, 48 Am. Dec. 748, where it is said that, under the constitution of 1832, chancery had no jurisdiction over the administration of estates, that jurisdiction being vested exclusively in courts of probate, but that, by the new constitution of 1868, jurisdiction of chancery courts had been enlarged and the former decisions of that court must be considered as overruled. No such limitation

upon a court of chancery exists either under the constitution or the statutes of this state.

■■ It appears from the evidence as well as from the pleadings that more than one year had elapsed after the order and decree of the county court approving and settling the final account of the administrator and discharging him as administrator had been entered. The suit, therefore, was not brought during the course of administration of the estate but after the administration thereof had been fully completed and the county court had lost all jurisdiction over the administration of the estate. Hence, the plaintiffs could have no remedy in the county court for the wrongs complained of and only a court of equity has jurisdiction to grant such relief. It is well settled in this state that county courts have no equitable jurisdiction: *Weill v. Clark's Estate*, 9 Or. 387; *Richardson's Guardianship*, 39 Or. 246, 64 P. 390; *Dunham v. Siglin*, 39 Or. 291, 64 P. 661; *Hillman v. Young*, 64 Or. 73, 127 P. 793, and *In re Estate of Hannah E. Elder*, 160 Or. 111, 83 P. (2d) 477, 119 A. L. R. 802. They do, however, possess the power, while the administration of the estate is pending before them, to correct any mistake or error when shown to exist in any account filed in said court by an administrator, but, as stated, that power had long ceased to exist when this suit was brought.

■ It is also well settled in this state that, when a court of equity has acquired jurisdiction for one purpose, it will retain such jurisdiction for all purposes connected with the subject matter of the dispute and administer full and complete relief if authorized by the pleadings. See *Templeton v. Bockler*, 73 Or. 494, 144 P. 405, and authorities there cited.

■ In *Froebrich v. Lane*, 45 Or. 13, 76 P. 351, 106 Am. St. Rep. 634, which was a suit brought to set aside the final order and decree of the county court, settling the account of an administrator, it was held that a court of equity has jurisdiction to set aside and enjoin the execution or enforcement of judgments at law and of its own decrees, when they have been procured by fraud, unaccompanied by negligence, laches or fault on the part of him who invokes the interposition of the remedy, and, in that case, this court quoted with approval from *Lucich v. Medin*, 3 Nev. 93, 93 Am. Dec. 376, as follows:

"a court of equity certainly has the power to inquire into the final account of an executor, and proceed to hear evidence to falsify and surcharge the account for fraud, and to render such decree as is necessary to do equity in the case".

This is clearly established as law in this state: *Fitchard v. Estate of H. H. Hirschberg*, 128 Or. 317, 272 P. 906. And this, we think, is the law prevailing elsewhere. See *Johnson v. Waters*, 111 U. S. 640, 4 S. Ct. 619, 28 L. Ed. 547. Hence, we hold that the circuit court in this case had jurisdiction to surcharge and falsify the final account of the administrator and to enter a decree granting to the plaintiffs the relief prayed for and that it would have been error for the court to have remanded the case to the county court for the settlement of the account there.

■ The defendants assign as error the rulings of the lower court relating to the alleged consent by the plaintiff, Ella Weinke, in respect to some of the doings and actions of the administrator and acquiescence upon her part, by reason of which the defendants claim that

she is now estopped to complain of any of the things and matters alleged in plaintiffs' complaint.

It appears from the evidence that Ella Weinke is the sister of Mrs. Majeske; that she had absolute confidence in the honesty and integrity of Adolph Majeske until after the filing of his final account, the contents of which she had no knowledge at the time; that she is a woman of but very little education, can hardly read, had had no business experience, and knew but very little of the business and property of her husband at the time of his death.

In passing upon the question of estoppel, it appears from the written opinion filed in the case by Judge Sweek that he held:

"The defendants plead estoppel in this case because they allege Mrs. Weinke represented to Majeske that she owned personal property held out from the estate and should not now be heard to complain. During the trial the Court was impressed with the fact that Mrs. Weinke is a timid uneducated woman. For all practical purposes, she was unable to read or write. That Majeske was her brother-in-law and a close friend of her deceased husband and the rest of the family. She was entirely ignorant of probate procedure and bewildered by the position in which she found herself after her husband's death. She naturally turned to Majeske, her relative and trusted friend, for advice. The court does not believe that she knew enough about the procedure to have suggested holding out anything from the estate but relied wholly and implicitly on Majeske's advice. She testified that after she found out that property had been unlawfully withheld from the estate Majeske prevented her from disclosing the facts by telling her that she would be put in jail if the facts became known. There is no estoppel under the circumstances in this case."

A careful consideration of the testimony offered upon the trial convinces us that no estoppel was established by any evidence offered upon the trial and that the court's holding in respect thereto should be affirmed.

■ But one other point needs to be considered in this case. That is the question of whether the plaintiffs are entitled to recover interest at the legal rate for the personal property and moneys coming into the possession of the administrator and which were wrongfully converted by him to his own use. As to the moneys received and converted the plaintiffs are clearly entitled to interest thereon from the date of the conversion. It appears from the evidence that, when the administrator entered into the possession of the estate property, he took and converted to his own use certain livestock, tools and machinery which belonged to the decedent at the time of his death and made no accounting thereof, and upon these items a judgment was given not only for the value of the converted property as fixed by the court but also interest at 6 per cent per annum from the date of the conversion.

The defendants contend that these amounts upon which interest was awarded being unliquidated, no interest should be charged until the value of the converted property was fixed and determined by the court. This contention cannot be sustained. The true measure of damages is compensation for the injury sustained and the plaintiffs were entitled to recover an amount which will place them in the same position they would have occupied had no loss occurred. On this question, Bowers on the Law of Conversion, 1917 ed., at page 459, says:

"The general rule fixing the measure of damages to be recovered against a wrong-doer who has converted personal property has been declared so many times that it is but the repetition of an almost stereotyped expression to say that the measure of recovery is the value of the property at the time of the conversion, with interest."

That rule prevails in this state. See *Eldridge v. Hoefer*, 45 Or. 239, 77 P. 874; *Singer v. Pearson-Page Co.*, 58 Or. 526, 115 P. 158; and *Abrams v. Rushlight*, 157 Or. 53, 69 P. (2d) 1063, 111 A. L. R. 1292.

Finding no error, the decree of the circuit court is affirmed.

BAILEY and KELLY, JJ., not sitting.