# GEORGE, *Respondent, Cross-Appellant,*
## *v.*
# COOMBES et ux, *Appellants.*
## (No. 75-1105, SC 24579)

562 P2d 200

Dean Heiling, Roseburg, argued the cause and filed the brief for appellants.

James H. Spence, Roseburg, argued the cause and filed the brief for respondent, cross-appellant.

Before Denecke, Chief Justice, and Holman, Lent and Davis, Justices.

[ 3 ]

DAVIS, Justice Pro Tempore.

**DAVIS, J.,** Pro Tempore.

This is a suit to determine the rights of the parties to a road easement across the plaintiff's land.

In 1967 plaintiff and Willie and Sally Ankeny were parties to a lawsuit involving the same easement roadway. The Ankenys at that time owned the land now owned and occupied by the defendants. Both parties were represented by attorneys and through their efforts an understanding was reached before trial and a "stipulated agreement" was entered into by plaintiff and his wife and the Ankenys. This agreement was thereafter recorded in the deed records of Douglas County, Oregon, and is the cause of the present suit, both parties requesting an interpretation of it.

The agreement provided that the Ankenys, their heirs, executors and assigns, would have "a perpetual and exclusive easement for roadway purposes." A description was thereafter set out. The Ankenys agreed to construct a fence along the north side of the easement, and plaintiff was to construct a gate at the entrance to his property. Although the agreement made no mention as to who would maintain the fence, the evidence during the trial of this case reflects that the Ankenys had refused to sign the agreement unless plaintiff would accept this responsibility. It was so accepted. The Ankenys thereafter sold their property to a Bruce Cunliff, who in turn sold to the defendants.

A dispute arose subsequently between the tenant of the plaintiff and the defendants over the use of this road, defendants contending that they and their invitees had the exclusive right to its use to the exclusion of all others, including the plaintiff. Plaintiff contends that it was an ordinary easement to be used exclusively for roadway purposes. As a result of this dispute, plaintiff had his land surveyed and it was discovered that the description of the roadway easement set out in the Ankeny agreement was in error and that a small portion of the roadway was not within

the described easement. It is plaintiff's contention that the defendants are not entitled to the use of this small parcel. Plaintiff further requested that a survey be made of the properties of plaintiff and defendants to determine the true boundary lines of their adjoining properties. After taking evidence, the trial court ruled as follows:

"1. Defendants have an easement for roadway purposes 30 feet in width from Defendants' property to and upon Lou Grey Road, a public road, the southerly boundary of said easement being an existing fence along and on or near the southerly boundary of Plaintiff's property;

"2. The aforesaid easement is exclusive in the sense that neither Plaintiff nor Defendants may grant any other easement rights on or to the easement area, and it inures soley [sic] to the benefit of Defendants' property;

"3. Plaintiff has the right to use said easement area in common with Defendants, but Plaintiff's rights are limited to such uses as are consistent with Defendants' use of the easement area;

"4. The existing fence running in a generally north-south direction at or near the boundary separating the property of the parties is hereby established as the true boundary line between their properties."

The defendants appeal the decree and plaintiff cross-appeals. We affirm.

■ An examination of the evidence indicates that the roadway in question was in existence prior to plaintiff's purchasing his property in 1965; that it was used periodically by him, his father-in-law, who was a permanent resident on the property until 1969, and thereafter by tenants who rented the land from the plaintiff. No objection to this use was made by the Ankenys, the Cunliffs or the defendants until 1975. It was necessary for plaintiff to go upon the easement to repair the fence built by the Ankenys, and plaintiff continued to pay the real property taxes on the easement area. The attorney representing the plaintiff at the time of the Ankeny agreement testified that he never intended that plaintiff would give up his right to

[ 6 ]

the use of the roadway, otherwise he would have advised his client to deed this area to the Ankenys in fee, thus avoiding the payment of taxes and any other problems that might arise.

The meaning of the word "exclusive" as it appeared in the Ankeny agreement was explained by this attorney as follows:

> "* * * The idea was that it wasn't to be farmed or anything like that, it was just to be a roadway and taking as little of Mr. George's property as reasonable for the roadway so that Mr. Ankeny could get into his property.
>
> "* * * * *
>
> "It was intended to—that it would be an exclusive easement for roadway purposes as the sentence reads. I read it the same now as I did then. In other words, in my thinking then, as now, we wanted it to be not a logging road, for example, coming out over there or any other property behind Mr. Ankeny's place but it was to be exclusively for Mr. Ankeny to get in and out of his property."

He further testified that neither the Ankenys nor their attorneys ever proposed to him that the easement be for the Ankenys' exclusive use. There were two attorneys representing the Ankenys but only one of them prepared the "stipulated agreement." Both attorneys for the Ankenys testified that it was their understanding and intent that their client would have an exclusive use of the roadway to the exclusion of all others, including the plaintiff. The attorney who prepared the agreement testified that such an "exclusive easement" is not "uncommon" in Oregon. In support of the testimony that "exclusive easements" are not uncommon in Oregon, the defendants cite only *Van Natta v. Nys and Erickson,* 203 Or 204, 278 P2d 163 (1954), 279 P2d 657 (1955). This decision was overruled in 1970 but not in relation to the discussion of exclusive easements.[1] We are of the opinion that

---

[1] *Garza v. Grayson,* 255 Or 413, 467 P2d 960 (1970).

[ 7 ]

*Van Natta* is compatible with the decree of the trial judge with respect to the rights of plaintiff and defendants to the use of this easement. It gives comfort to not only the defendants but to the plaintiff as it relates to the decree. A pertinent portion of *Van Natta* states:

"Although the plaintiff has an easement by necessity in the road in issue, it is our belief that he cannot use it to the exclusion of the Ericksons, who are the owners of the servient tenement. In 1 Thompson on Real Property (Perm Ed), § 329, p 525, it is said:

" 'A grant of the exclusive use of land is not an easement, for such a grant excludes the grantor, and is in practical effect a grant of the soil itself.'

The owner of the servient tenement may also use a road in which another has an easement. In 3 Tiffany, Real Property (3rd Ed), § 811, p 355, it is stated:

" 'The owner of land subject to a right of way may himself use the same way, provided this does not unreasonably interfere with the exercise of the other's easement.'

The following appears in 28 CJS, Easements, § 91(b), p 771:

" '* * * an owner, whose land is burdened with a right of way, unless he has expressly agreed to the contrary, may use the land over which the way passes in any manner which does not materially impair or unreasonably interfere with its use as a way. Without expressly reserving the right, he may himself use the way, or permit others to do so, unless the rights of the owner of the easement are exclusive; * * *. However, the use of the servient owner must be reasonable and not such as will injure, impair, or obstruct the enjoyment of the way by the grantee or subject him to extra labor and expense in keeping it in repair; and the owner of the way may restrict such use of it by the owner of the servient tenement as is inconsistent with the enjoyment of the easement.' " 203 Or at 218.

The literal language, "a perpetual and exclusive easement for roadway purposes," without more, would ordinarily, but not necessarily, be held to mean that defendants' right to use the easement was exclusive in

the sense that it could not be used by others, including plaintiff. Plaintiff seeks to interpret the language as if it had been written, "A perpetual easement exclusively for roadway purposes." Despite language of the agreement which favors and is consistent with defendants' contentions, and despite conflicting testimony on the subject, we are of the opinion that it was the probable intention of the parties to the agreement that plaintiff's use not be excluded.

Plaintiff contends that the trial court erred in accepting the description of the easement as it appears in the Ankeny agreement, admitting, however, that he and the Ankenys intended that the easement would encompass the existing roadway. Plaintiff argues that this was a mutual mistake; however, he agrees that reformation to this part of the agreement would be no problem, but since it was not sought nor pleaded by the defendants and since the Ankenys and plaintiff had never reached an understanding as to the boundaries of the easement area, the trial court could not give it the interpretation decreed without first reforming the "stipulated agreement."

■ We find, as did the trial court, that the evidence was sufficient to support the adoption of the description of the easement as it appears in the Ankeny agreement. Thus a survey as requested by plaintiff was found unnecessary (Appendix A). As stated in *Brooke v. Amuchastegui,* 226 Or 335, 341, 360 P2d 275 (1961), "It is a general rule of equity that under a prayer for general relief, as here, the chancellor may shape his decree according to the equities of the case and will grant any relief warranted by the allegation of the bill and the evidence of the case. * * *"

Affirmed. No costs to either party.

CLYDE H. GEORGE PROPERTY
W 1/2 SE 1/4 NE 1/4 SE7 T33S R5W W.M.
Map Prepared by Don E. Garrett
March 1976
Scale 1" = 100'

Appendix "A"

30' ROAD EASEMENT

S89°56'30"E    636.89

Transit Way

SW Cor E 1/2
SE 1/4 NE 1/4

CE 1/16

LOU GRAY DRIVE 50'

[ 10 ]